UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CARL J. HACH,

Plaintiff,

v.

SUE M. PEDERSEN, and
PAM M. MATSON,

Defendants.

CIVIL NO. 01-1866 (RHK/JMM)

REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Federal Correctional Institution in Sandstone, Minnesota, ("FCI-Sandstone"), has filed a Complaint seeking relief for alleged violations of his federal constitutional rights. (Docket No. 1.) The matter is presently before the undersigned Magistrate Judge for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1] For the reasons discussed below, the Court finds that Plaintiff's Complaint fails to state a claim on which relief can be granted. It will therefore be recommended that this action be summarily dismissed pursuant to § 1915A(b).

## I. BACKGROUND

Plaintiff alleges that on January 25, 2001, he used a telephone at FCI-Sandstone to call a non-prisoner acquaintance. While conversing with that person, Plaintiff

---

[1] Plaintiff did not tender the statutory filing fee with his Complaint, but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated October 19, 2001, (Docket No. 3), the Court advised Plaintiff that his IFP application would not be addressed, and his action could not proceed, unless he paid the initial partial filing fee required by 28 U.S.C. § 1915(b)(1). Plaintiff has now paid the full $150 filing fee for this action, and the matter is therefore ripe for initial screening pursuant to § 1915A.

FILED JAN 0 8 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

passed along a message from another inmate. Defendant Pam Matson, a prison official at FCI-Sandstone was monitoring Plaintiff's phone call, and heard him relay the message from the other inmate. After Plaintiff completed his call, he was accused him of engaging in a "three-way call," in violation of "BOP ['Bureau of Prisons'] Code 297."

A formal "incident report" was later filed against Plaintiff, and on February 1, 2001, he appeared before Defendant Sue Pedersen, a disciplinary hearing officer, ("DHO"). Plaintiff argued that he had not done anything prohibited by BOP Code 297, but his argument was rejected. He was found guilty of "aiding in phone abuse" in violation of BOP Code 297A, and he received the following sanctions -- "27 days loss of good time, 180 days loss of telephone, and 90 days suspended pending 180 days of clear conduct." (Complaint, [Docket No. 1], pp. 5-6, ¶s 16-17.)

Plaintiff received another incident report in January or February 2000, for "Running A Business – Attempted," in violation of BOP Code 408/A. That incident report was issued because another inmate used Plaintiff's name as a reference on a loan application form. On February 16, 2001, Plaintiff again appeared before Defendant Pedersen, and he again contested the disciplinary charge that had been brought against him. Pedersen apparently did not find Plaintiff guilty of the charge described in the pending incident report, but she did find him guilty of "Receiving Something Of Value From Another Inmate, Attempted," in violation of "Code 328A." (Id., p. 7, ¶ 24.) As a result, Plaintiff received further disciplinary sanctions consisting of "15 days disciplinary segregation, 8 day[s] suspended pending 180 days clear conduct." (Id., ¶ 25.) Plaintiff further alleges that he lost his prison job because of his assignment to disciplinary segregation.

Plaintiff challenged Defendant Pedersen's rulings in both of the aforementioned disciplinary proceedings, by pursuing the BOP's administrative remedy procedures. Those challenges, however, were unsuccessful. (Id., p. 8, ¶ 26.)

On October 11, 2001, Plaintiff commenced his present civil rights action. He is seeking relief under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for alleged violations of his constitutional right to due process. In his prayer for relief, he asks for $10,000 in monetary damages to compensate him for (a) the time he spent in disciplinary segregation, (b) his lost wages, (c) his lost telephone privileges, and (d) his lost good time. He is also asking for punitive damages in the sum of $25,000, as well as "expungement of Incident Reports and disciplinary sanctions," and restoration of his lost good time credits and his prison job.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

Here, the action must be dismissed in its entirety pursuant to § 1915A(b)(1), because Plaintiff has failed to state any claim on which relief can be granted. Plaintiff has

failed to state an actionable claim, because he has not alleged any facts showing that Defendants violated his constitutional right to due process.

To maintain an actionable due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). The only possible interests at issue in this case appear to be (i) Plaintiff's interest in remaining in the general prison population, (as opposed to segregated confinement), (ii) his interest in keeping his prison job, and (iii) his interest in retaining his good time credits. While such matters are undoubtedly important to Plaintiff, they cannot provide the basis for a Bivens civil rights action.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). There, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), our Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

Here, Plaintiff has not pleaded an actionable due process claim because he has presented no factual allegations suggesting that he has been subjected to the type of severe hardship that Sandin requires. Again, the only "hardships" that Plaintiff has pointed to are (1) his assignment to segregated confinement, (2) the loss of his prison job, and (3) a loss of good time credits. However, the first two of these purported "hardships," (i.e., segregated confinement and loss of a prison job), do not constitute the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin. The third hardship, (loss of good time credits), may give rise to cognizable claim -- but not one that can be litigated in the present civil rights action.

**(i) Segregated confinement**

It is not clear just exactly how much time Plaintiff actually spent in segregated confinement. However, it clearly appears that he was in segregated confinement for no more than 105 days, and perhaps quite a bit less than that.[2] While Plaintiff's term of segregated confinement may have been unpleasant, (no matter how long it lasted), it does not constitute the type of "atypical and significant hardship" that will support a due process claim.

---

[2] At paragraph 17 of his Complaint, Plaintiff alleges that the disciplinary sanctions imposed for improper use of the telephone included "90 days suspended pending 180 days clear conduct." The Court understands this to mean that Plaintiff was "sentenced" to 90 days of segregated confinement, but he would not have to actually serve that "sentence" if he maintained good conduct (i.e., violation-free conduct) for 180 days. At paragraph 25 of the Complaint, Plaintiff alleges that his second disciplinary sanction included "15 days disciplinary segregation, 8 day[s] suspended pending 180 days clear conduct." This suggests that Plaintiff was required to spend at least seven days in disciplinary segregation, but he may have been excused from serving the last eight days of his 15-day "sentence." Altogether then, it appears that Plaintiff was required to spend no more than a total of 105 days in segregated confinement; and, if he maintained "clear conduct," he may have actually spent just seven days in segregated confinement.

Sandin itself shows that segregated confinement does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected liberty interest. Although the term of segregated confinement at issue in Sandin was only 30 days, other federal cases decided after Sandin establish that even much longer periods of segregated confinement do not constitute the type of hardship that can give rise to a due process claim.[3] There are quite a few federal court decisions rejecting due process claims based on periods of segregated confinement much longer than the 105 days (at most) at issue in the present case.[4] At the same time, the Court is not aware of even one case in which a prisoner has been allowed to maintain a due process claim based on a term of segregated confinement of less than a full year.

---

[3] In two unpublished decisions, the Eighth Circuit has found that periods of segregated confinement far longer than the 30 days involved in Sandin do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim). See also Wycoff v. Nichols, 94 F.3d 1187, 1189-90 (8th Cir. 1996) (10 days of disciplinary detention followed by 90 days in a maximum security cell, did not constitute an atypical hardship requiring the protections of due process).

[4] See e.g., Jones v. Baker, 155 F.3d 810 (6th Cir. 1998) (30 months); Griffin v. Vaughn, 112 F.3d 703 (3rd Cir. 1997) (15 months); Bonner v. Parke, 918 F.Supp. 1264 (N.D.Ind. 1996) (36 months); Dabney v. Anderson, 92 F.Supp.2d 801 (N.D.Ind. 2000) (36 months); Polanco v. Allan, No. 93-CV-1498 (N.D.N.Y. 1996), 1996 WL 250237 (12 months); Acosta v. McGrady, No. CIV.A. 96-2874 (E.D. Pa. 1999), 1999 WL 158471 (14 months); Johnston v. Vaughn, No. CIV.A. 00-CV-1844 (E.D.Pa. 2000) 2000 WL 1694029 (15 months). See also, Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

Therefore, based on Sandin and its progeny, the Court concludes that Plaintiff's term of segregated confinement, even if it was as long as 105 days, does not, by itself, constitute the type of hardship that would implicate a protected liberty interest. It follows that Plaintiff cannot maintain a due process claim based on whatever term of segregated confinement he may have been required to serve.[5]

**(ii) Prison job**

Plaintiff's loss of his prison job also is not a serious enough hardship to support an actionable due process claim. Prisoners are frequently denied employment opportunities for many different reasons, and such events are not considered to be an "atypical and significant hardship" or a "dramatic departure" from the ordinary conditions of a prison sentence. Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669-70 (8th Cir. 1996); Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). Thus, under the Sandin test, Plaintiff had no constitutionally protected liberty interest in retaining his prison job. It follows that Plaintiff cannot maintain a due process claim based on the loss of his prison job.

**(iii) Good time credits**

Finally, to the extent that Plaintiff's claims are based on a loss of good time

---

[5] It also should be noted that a temporary loss of telephone privileges is not an "atypical and significant hardship" for purposes of the Sandin analysis. Troy v. Kuhlmann, No. 96 Civ 7190 (BSJ), (S.D.N.Y. 1999), 1999 WL 825622 at *12 ("denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate"); Boglin v. Weaver, No. CIV. A. 00-0620-CB-L (S.D.Ala. 2001), 2001 WL 228172 at * 11 ("[t]he loss of telephone privileges... [is] not a dramatic departure from the ordinary conditions of confinement, nor is it a major disruption in Plaintiff's environment as a prisoner").

credits, it is unnecessary to decide whether he suffered an actionable hardship, because such claims are barred in any event by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). There, the Court reiterated that a prisoner cannot challenge the fact or duration of his incarceration in a civil rights action. Habeas corpus is the exclusive federal remedy for a prisoner who is challenging the validity of his conviction or the length of his sentence. Id. at 481, citing Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973). Thus, even when a prisoner-plaintiff demands only money damages, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Heck, 512 U.S. at 483; see also, Edwards v. Balisok, 520 U.S. 641 (1997); Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996).

In this case, it is readily apparent that a judgment for Plaintiff on his good time credit claim would necessarily imply the invalidity of his sentence. That is the very essence of the claim; he is contending that his sentence has been unlawfully extended by the number of days of good time credit lost to him as a result of the allegedly unconstitutional disciplinary sanctions imposed against him. Indeed, Plaintiff has expressly asked the Court to enter an order that would restore the good time credits he has lost, which would, in effect, expedite his release from prison. According to Heck, however, the length of Plaintiff's sentence is a subject that cannot be considered in a federal civil rights action, unless Plaintiff has already established in a proper forum -- presumably a habeas corpus proceeding brought under 28 U.S.C. § 2241 -- that his release date should be moved up.

Moreover, even if Plaintiff were seeking only money damages for his loss of good time credits, he still could not bring a civil rights claim at this time, because a judgment in his favor on his due process/good time claim would necessarily raise doubts

about the validity of his current release date and the proper duration of his confinement. See Sheldon, 83 F.3d at 233 ("Heck requires favorable termination of the action in an authorized state tribunal or a federal habeas corpus court, even if the claim is for damages rather than earlier release"); see also, Edwards v. Balisok, supra.

In short, Plaintiff's claim based on his loss of good time credits is premature at best. He cannot maintain a civil lawsuit seeking damages, or injunctive relief, for actions that have resulted in an extension of his imprisonment, without first securing an order specifically invalidating the length of his sentence. In other words, he must successfully demonstrate, in a habeas corpus action, that his sentence was wrongly extended before he can recover damages arising in connection with the disciplinary proceedings that caused such extension. Because this pre-condition has not been met, Plaintiff's present Bivens claim is not actionable at this time, (if at all).

## III. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff has failed to state any cause of action on which relief can be granted. It will therefore be recommended that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Because Plaintiff has already paid the full filing fee for this action, (see n. 1, supra), and he has shown no other need for IFP status, it will be recommended that his IFP application be denied as moot. Finally, it will be recommended that the dismissal of this action count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's "Application to Proceed Without Prepayment of Fees" (Docket No. 2) be **DENIED AS MOOT**;

2. The action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1); and

3. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: January 7, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before January 28, 2002, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.